[No. 20352.   In Bank. — February 11, 1888.]

## THE PEOPLE, RESPONDENT, v. JOSEPH F. DYE; APPELLANT.

IMPEACHMENT OF WITNESS. — A witness cannot be impeached by contradicting him upon collateral matters.

IRRELEVANT EVIDENCE. — Irrelevant evidence on one side does not justify irrelevant evidence on the other.

ID. — Upon the trial of a party accused of murder, somewhat remotely growing out of the improper relations of the prisoner's wife with another man, which fact appeared in the prisoner's evidence, and in the cross-examination, it is error to allow the prosecution in rebuttal to prove that some time after the killing the prisoner had sent his wife to demand money from the man with whom she had had the improper relations.

PROOF OF AGENCY — DECLARATION OF AGENT. — The mere declaration of a party is not proof that he is the agent of another.

APPEAL from a judgment of the Superior Court of Ventura County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Bicknell & White,* and *H. T. Gage,* for Appellant.

*Attorney-General Johnson,* for Respondent.

HAYNE, C.—The defendant was convicted of murder in the second degree, for the killing of one Herman Haines, and was sentenced to sixteen years in the state prison.

The shooting occurred in the store of one Cohen, in the town of Santa Paula. The evidence tends to show that the two men met in the store, and that Haines bid the defendant "Good morning" as he passed him, whereupon the defendant exclaimed: "You dirty scoundrel, how dare you speak to me?" and taking him by the throat, slapped his face several times. Cohen, the storekeeper, then threw his arms around the defendant and held him, doubtless with a view to put an end to the struggle. Haines then ran to the corner of the store,

where he had left his rifle on entering the place, and took it up. In the mean time the defendant had got loose from Cohen, and dodging behind the counter, approached Haines in a stooping posture. The evidence tends to show that Haines had got hold of his rifle, and was pointing or endeavoring to point it at the defendant as the latter approached him. The defendant, before reaching Haines, but when quite close to him, fired two shots with his revolver, and on reaching him, took the rifle from him, or knocked it out of his grasp. Haines then ran into the street. The defendant followed and fired a shot as Haines was running away. The defendant's version of the affair differs somewhat from the foregoing. He says that Haines jostled him in passing, and that he did not fire when Haines ran away.

Three wounds were found upon Haines,—one in the shoulder, one in the abdomen, and one in the thigh. According to a physician, either of the two former were sufficient to cause death, but the wound in the thigh was not dangerous. There is some evidence to the effect that the wound in the shoulder was from the first shot, but there is nothing to show the order of the other wounds. Haines died in three or four days after being shot.

The defense was, that the shooting was necessary for the defendant's protection. He gave evidence tending to show that Haines had threatened to kill him, and that he had been informed of such threats, and introduced evidence tending to show the following facts:—

Haines and his son, a boy about sixteen years old, were in defendant's employ upon a ranch which he was managing. One day, a short while before the shooting, he intercepted a letter from Haines to his (defendant's) wife. This letter was as follows: "Mrs. Dye: Meet me at the barn to-night, or I will tell Joe about that medicine. Answer. H. Haines." Underneath this, on the same paper, was written: "I return your insult, and I say to

you for the last time, never come upon this ranch or speak to me again. G. L. Dye. August 19, 1886."

This letter was brought to Mrs. Dye by Haines's son. On taking it from the boy the defendant gave him a whipping, and the next day paid off and discharged both him and his father, and wrote to Haines never to speak to him again.

This evidence, as a matter of course, was not admissible to justify the taking of Haines's life. But it was admissible in connection with Haines's threats, for the purpose of showing that the threats were not mere idle vaporings, but came from a man who had, or thought he had, a grievance, and were therefore to be heeded.

During his testimony as to the above matters, the defendant stated that after the affair of the letter, his wife left the ranch to visit her mother in San Francisco. This seems to us to have been an irrelevant circumstance. We cannot see what the movements of Mrs. Dye, after the difficulty as to the letter, had to do with the defense made. When she came on the stand, and had testified concerning the affair of the letter, the prosecution drew from her on cross-examination the information that she had not gone to visit her mother in San Francisco, but had gone to Los Angeles, and went on to cross-examine her, against the objections of the defense, as to her movements there,—eliciting the statements that she staid at Stone's lodging-house, and that on one occasion she had gone to Congress Hall saloon to see the proprietor, one Baker, and had seen one Crow there. She was also cross-examined as to whether her husband had sent her to see Crow, but she denied that he had.

After this cross-examination the defendant introduced evidence tending to show that at the time of the affair of the Haines letter he discovered that his wife had had improper relations with the Crow mentioned in the cross-examination above referred to, and that a correspondence had been kept up between them through the

medium of Haines, the letters to her coming under cover to Haines, who thought "it was rather dangerous business, but he would do it anyhow."

We hardly see why the defense should have wanted these facts in evidence. But they were admissible on behalf of the defendant, upon the same principle that the Haines letter was admissible; viz., in connection with the threats of Haines, and to show that there was a grievance between the two men, and that the threats were in earnest, and therefore to be heeded.

The defendant went on to introduce a letter from his wife to Crow, written about three days after the Haines letter affair, in which she stated that she was in trouble, and asked him to send her fifty dollars by registered letter, under cover to Haines.

The prosecution then drew out on cross-examination that at the Congress Hall saloon interview she demanded one thousand dollars from Crow. Not getting that, she demanded three hundred dollars. She got forty dollars or fifty dollars. In this connection she testified, "My husband and I had separated at that time." She denied that the defendant had told her to make the demand upon Crow, or to go to see Baker.

In rebuttal the prosecution was allowed, against the objection of the defendant, to go into the Congress Hall saloon interview, and to prove that Mrs. Dye there stated that the defendant had sent her there *for the purpose of getting money out of Crow*, and that when she got some money she wrote to the defendant to "drop everything; there is no occasion for to make any further trouble."

We have been thus particular in stating the proceedings in order that it may be seen how far away the court traveled from the issue it was trying; viz., whether the killing of Haines was justifiable. Mrs. Dye's attempt to get money out of Crow had nothing to do with this issue. The fact that the evidence in rebuttal tended to contradict some of the things she said on cross-examination

did not make it proper to extend the investigation, as was done here. A party cannot cross-examine his adversary's witness upon irrelevant matters, for the purpose of eliciting something to be contradicted. And if such matters are drawn out, the court should stop the inquiry there. It is well settled that a witness cannot be impeached by contradicting him upon collateral matters. (*People* v. *Webb,* 70 Cal. 120; *People* v. *Furtado,* 57 Cal. 346; *People* v. *Devine,* 44 Cal. 458.) Nor does it make any difference that the subject of the relations of Crow with defendant's wife was commenced by the defense. The defendant's evidence on this point stopped far short of the testimony complained of. And conceding a great part of it to have been irrelevant, it furnished no justification for the course taken by the prosecution. The introduction of irrelevant evidence by one side does not justify the introduction of further irrelevant evidence by the other. (*Donnelly* v. *Curran,* 54 Cal. 282.) Any other rule would destroy the law of evidence, and make trials interminable.

The irrelevant evidence, so introduced by the prosecution, was very prejudicial to the defendant's case. It held him up to the jury as attempting to make money out of his wife's shame. The prosecution might, with equal propriety, have undertaken to get a verdict by proving that he was a horse-thief or a black-leg, or any other thing calculated to expose him to contempt. In a case which is at all doubtful, such a course would be almost certain to produce a conviction from an average jury. It is contrary to the first principles of justice to try a man for one crime and convict him of that, because he may be guilty of another, or because he may be a low specimen of humanity.

The fact, therefore, which was sought to be shown was not proper for the consideration of the jury. But if it had been, the mode of showing it was improper. It consisted in proving that at the time she demanded

the money, Mrs. Dye *said* that her husband had sent her to do so. There was no other evidence of the fact beyond such declaration. But any rogue may use the name of an honest man to facilitate his roguery. It is well settled that the mere declaration of an alleged agent is not evidence of the existence of the agency. (*Grigsby* v. *Clear Lake Water Co.*, 40 Cal. 396; *S. & L. Soc.* v. *Gerichten*, 64 Cal. 521; *Brigham* v. *Peters*, 1 Gray, 145; *Lambert* v. *People*, 76 N. Y. 228, 229; 32 Am. Rep. 293; Wharton on Criminal Evidence, 9th ed., sec. 695.)

There are other matters argued which will probably not arise upon a retrial. But we deem it proper to say that it is an exceedingly doubtful matter whether the witness Granger should have been permitted to testify as to the genuineness of the Haines letter.

We think, also, that the following part of the charge is somewhat confused: " The law does not require demonstration in evidence to establish a fact; that is, such a degree of truth as, excluding *the probability* of error, produces absolute certainty, because such proof is rarely possible. Moral certainty only is required," etc. If " the probability " of error need not be excluded, then evidence is sufficient although it leaves error probable. This hardly amounts to moral certainty or proof beyond a reasonable doubt. The word " possibility" would be better in this connection.

So it was not accurate to tell the jury that the defendant was justified in the killing, " if *necessary* for his own protection," etc. It would have been better to have said " if actually or apparently necessary," etc. (See *People* v. *Gonzales*, 71 Cal. 577; *People* v. *Flahave*, 58 Cal. 249.)

So we think it would have been better to have given the instruction on pages 481 and 482 of the record, referred to on pages 43 and 44 of appellant's brief.

We advise that the judgment be reversed, and the cause remanded for a new trial.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT. — For reasons given in the foregoing opinion, the judgment is reversed, and cause remanded for a new trial.