## PEOPLE v. BRUGGY.*

### No. 20,706; May 22, 1891.

#### 26 Pac. 756.

**Homicide—Self-defense.—An Instruction That if Defendant** killed deceased in resisting an attempt on the part of deceased to "murder" defendant, or an attempt to do defendant great bodily harm, then the killing was justifiable, is not fatally erroneous, as it does not tend to lead the jury to understand that an attempt to kill defendant not constituting murder would not justify the killing by defendant.

**Homicide—Self-defense.—An Instruction That if Defendant** drew his pistol with a deliberate intent to kill deceased, and that deceased saw the pistol, and, believing himself in danger of defendant, ran away, and that defendant, with intent to willfully and deliberately kill deceased, followed for the purpose of overtaking or meeting and killing him, and did meet him, unarmed, and showing no disposition to kill defendant, and defendant then and there, without believing himself in danger of losing his own life, fired, and killed deceased, then the evidence showed no self-defense, cannot be objected to on the ground that it omits the hypothesis of defendant's being in danger, or believing himself in danger, of receiving great bodily harm.

APPEAL from Superior Court, Sonoma County; S. K. Dougherty, Judge.

J. C. Sims for appellant; W. H. H. Hart, attorney general, for the people.

PER CURIAM.—The defendant was convicted of murder in the first degree, and is under sentence of death. He appeals from the judgment rendered against him, and from an order refusing a new trial. He makes the point that the evidence is insufficient to sustain the verdict. The jury had before them persons who witnessed the homicide, and all its attendant circumstances. There was certainly some evidence which tended to show the guilt of the defendant as charged; and that being so, we are not warranted in saying that the

---

*For subsequent opinion in bank, see 93 Cal. 476, 29 Pac. 26.

jury gave it improper weight, and should not have returned the verdict which they did.

It is further claimed that the instruction of the court was erroneous, which was in this language: "If the jury believe from the evidence in this case that the defendant, Bruggy, killed the deceased by shooting him, and that the shooting was done by Bruggy in resenting an attack on the part of the deceased to murder him, Bruggy, or an attempt on the part of the deceased to do great bodily harm to him, Bruggy, then in such case I instruct you the killing by Bruggy was justifiable, and you should find the defendant not guilty. The rule in such a case is this: What would a reasonable person— a person with ordinary caution, judgment, and observation— in the position of the defendant, seeing what he saw, and knowing what he knew, suppose from his situation and his surroundings? If such reasonable person, so placed, would have been justified in believing himself in imminent danger, then the defendant would be justified in believing himself in such peril, and in acting on such appearances." The defendant contends that this instruction should not have confined his right to kill the deceased to a state of facts where the deceased was endeavoring to murder Bruggy, or to do him some great bodily harm, but that it should have stated further that an attempt to kill Bruggy by the deceased, either with or without malice aforethought, would have warranted the defendant in taking the life of the deceased, and that the word "murder" was misleading in the connection in which it was used. It must be borne in mind that this instruction was to the effect that, if the whole evidence showed a certain condition of affairs, the defendant was to be acquitted. If it had stated that Bruggy was not to be acquitted unless murder or some great bodily harm was then about to be accomplished by the deceased, then it is plain that the instruction would be misleading. But it is not manifest that as reasonable men the jury could have understood the instruction to mean what the defendant claims. Such a construction by them would not be harmonious in any degree with the language used by the court, and, although to be strictly accurate, the words suggested, or some others appropriate to convey the idea, would have made the instruction clearer, the omission to do so did not, in our opinion, have or tend to have

a misleading effect. The test in such a matter as this is not that a given instruction is erroneous merely, but, if the court can see that it did not mislead the jury, the judgment will not be disturbed: Hayne on New Trial and Appeal, sec. 122.

We do not perceive that the instructions of the court with reference to what constitutes murder in the first and second degrees were either misleading or erroneous. If appellant desired any further instructions on that subject he should have asked for them: People v. Franklin, 70 Cal. 642, 11 Pac. 797; People v. Northey, 77 Cal. 618, 19 Pac. 865, 20 Pac. 129.

Another ground on which the appellant urges that the judgment and order should be reversed is that the jury were erroneously instructed and misled by the court in the following instruction: "If you believe from the evidence that the defendant, while upon the sidewalk, drew his pistol with a deliberate intent to kill and murder Dick Louison, and that Dick Louison saw the pistol, and, believing himself in danger of the defendant, ran away, and through the alley, and into the saloon, to avoid the defendant; and you further believe from the evidence that the defendant, with intent to willfully and deliberately kill and murder Louison, entered and passed through the saloon with the pistol in his hand, for the purpose of overtaking or meeting him and killing him; and you further believe from the evidence that he did meet the deceased coming into the saloon through one of the back doors of the saloon, unarmed, and showing no disposition to kill and murder the defendant, and that the defendant then and there, without believing himself in danger of losing his own life at the hands of Dick Louison, fired the fatal shot, and killed said Louison—then I instruct you the evidence shows no self-defense." The objection to this instruction is that it is confined to a reasonable ground for belief by appellant that he was in danger of "losing his own life," and does not include the other proposition, that he was in danger, or believed himself in danger, of receiving great bodily injury. If the instruction had been intended as an abstract statement of the general doctrine of self-defense there might have been some force in the objection, although even in such case, if the court should give another instruction containing the element of fear of great bodily injury (as was done in the case at bar), it is difficult to see how error could be successfully assigned. But

such was not the case with respect to the instruction in question. It was based upon a hypothesis (founded on the evidence) which excluded the notion of self-defense entirely. If a defendant pursues the deceased (who runs away) with a drawn pistol, intending to kill and murder the deceased, and does not make any endeavor to decline any further struggle, the fact that at the moment of the fatal act the deceased makes some effort to defend himself, which may put the defendant in danger of either death or bodily injury, does not constitute self-defense. The instruction would not have been erroneous if it had not contained any allusion at all to the defendant's belief of danger to his own life. There was nothing in it of which defendant at least could complain. The law of self-defense was very correctly given to the jury in the general charge of the court, which was as favorable to defendant as he could reasonably expect; and we see no error that would warrant a reversal of the judgment.

The evidence discloses that the killing of the deceased was to some extent the result of a drunken brawl; and it would seem that a verdict by the jury of imprisonment for life would have satisfied the law, but that is not a question to be here considered. The law gives the power of fixing the punishment in such cases to the jury, and the only appeal from their decision as to that matter is to the executive. The judgment and order denying a new trial are affirmed.

PATERSON, J., Dissenting.—I think the instruction referred to in the opinion was erroneous. It ignores the fact that the defendant may have declined any further struggle immediately prior to the firing of the shot. Although he was the assailant, if he in good faith ''endeavored to decline any further struggle before the homicide was committed, the homicide was justifiable'': Pen. Code, sec. 197, subd. 3. Whether he did so decline further combat was a question of fact for the jury to determine on the evidence. It cannot be said that there was no evidence tending to show such a declination. The parties met right at the back door of the saloon, and the deceased immediately grabbed the defendant by the arms, and pushed him back several feet to the billiard-table, and was pushing him over against it when the fatal shot was fired. What occurred beyond what has been stated, or what,

if anything, was said by either party after they met at the rear door of the saloon, and before the shot was fired, does not appear in the evidence. If the defendant did decline further struggle, he was justified in shooting the deceased if he believed that he was in danger of receiving great bodily injury. This element was also omitted from the instruction.

The court instructed the jury that "to reduce a felonious homicide from the grade of murder to that of manslaughter, upon the ground of sudden quarrel, or heat of passion, the provocation must be of such a character as would be naturally calculated to excite and arouse the passions; and it must appear that the party acted under the smart of his sudden passion and resentment." Here the element of malice is entirely wanting in the charge, yet without malice there can be no murder. The instruction is erroneous because it in effect tells the jury that, although the defendant acted under a heat of passion, it could not be manslaughter unless the provocation was of such a character as would naturally excite and arouse the passions of an average man. The question is not whether some other person would probably have been excited and thrown into a passion by similar circumstances, but whether the defendant acted "upon a sudden quarrel or heat of passion": Pen. Code, sec. 192. What will excite and anger one man might simply amuse another. The court gave this instruction: "Upon the law of self-defense, I instruct you as follows: To justify the killing of another in self-defense it must appear that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary; and it must appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline further trouble before the fatal shot was fired. If the jury believe from the evidence that the defendant, George Bruggy, at the time he fired the fatal shot which killed the deceased, Dick Louison (if he did fire such shot and kill him), believed, and had good reason to believe, that his life was in imminent danger at the hands of said Dick Louison, then I charge you that the defendant was justifiable in firing said shot, and you should acquit him." This instruction is loaded down with errors of a glaringly prejudicial character. The first part of the instruction has been condemned here several

times: People v. Flahave, 58 Cal. 250; People v. Gonzales, 71 Cal. 577, 12 Pac. 783; People v. Dye, 75 Cal. 113, 16 Pac. 537. The last part of the instruction in effect tells the jury—and no doubt they so understood it—that unless the defendant believed, and had good reason to believe, that his life was in imminent danger, he was not justifiable in firing the shot, thus ignoring the question of appearances, and fear of great bodily injury: People v. Flanagan, 60 Cal. 4, 44 Am. Rep. 52; Pen. Code, sec. 197. If these instructions were erroneous (and I think it must be conceded that they were), they were not cured by other instructions on the same point, although the latter may have been correct: People v. Anderson, 44 Cal. 65. The court in another instruction used this language: "If the murder was deliberate and premeditated, it was murder of the first degree; otherwise it was murder of the second degree." In calling the attention of the jury to the fact that the defendant had been a witness in his own behalf, the court said: "It is proper for the jury to consider whether this position and interest [the defendant's] may not affect his credibility, or color his testimony." The peculiar terms employed here seem to indicate an intimation by the learned judge that the defendant's interest in the case had evidently caused him to "color his testimony." The defendant requested the court to give an instruction on the question of reasonable doubt, which has been several times approved here. It was refused on the ground that it had already been given in the charge of the court, and it is true that the substance of the instruction was given by the court in its own charge, but it was given in such an attenuated form that I think the defendant may justly complain, although standing alone, perhaps, it could not be held to be prejudicial. It is true some of the instructions I have referred to have not been criticised by counsel for the appellant in his brief, but they were all excepted to in the court below, and I think, considering the importance of the case, it is the duty of our court to notice them, whether defendant's counsel refers to them or not. The learned judge of the court below doubtless would have corrected the instructions if his attention had been called to the matters omitted therefrom, but I am unable to see how it can be claimed that other instructions given on the same subject cured the errors in those referred to.