[Crim. No. 3830. Second Dist., Div. One. Jan. 4, 1945.]

THE PEOPLE, Respondent, v. DORAND METRO OHMAN, Appellant.

Maurice A. Gleason for Appellant.

Robert W. Kenny, Attorney General, and Everett W. Mattoon, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County, containing seven counts, the defendant was accused in counts one and seven of the crime of grand theft, in counts two and five of the crime of forgery of endorsement, while counts three, four and six charged the crime of forgery. Following the entry of not guilty pleas and trial before a jury, guilty verdicts were returned as to all seven counts. A motion for a new trial was denied and this appeal is prosecuted by the defendant from the judgment of conviction and from the order denying his motion for a new trial.

The sole ground relied upon by defendant for a reversal is that the evidence is legally insufficient to support the judg-

ment of conviction. It therefore becomes necessary to epitomize the evidence presented at the trial. In that regard, the record discloses that Wilbur C. Abbott testified that he is engaged in the automobile business in the city of Los Angeles, that on or about November 10, 1943, he saw the defendant, who was accompanied by two other young men, at his place of business, about 10:30 o'clock in the morning. That the defendant brought in a 1941 Tudor sedan and inquired of the witness as to whether the latter desired to purchase an automobile. After driving the vehicle around the block, the witness made the defendant an offer of $965 for the same, which offer was accepted. Mr. Abbott then gave the defendant $300 in cash and stated he would give him the balance in a check. After making out a bill of sale, the witness asked the defendant to sign the same, which the latter did. The defendant affixed his signature to the bill of sale with Mr. Abbott's fountain pen while seated at the latter's desk and facing the witness. A receipt for the $300 partial payment on the automobile was signed by defendant with the name "M. D. Frassi." The defendant showed the witness an automobile registration card for 1943, made out in the name of "M. D. Fraissi, 3042 Grove Street, Oakland, California," and affixed the signature "M. D. Fraissi" thereon as the legal owner or lienholder of record with the Department of Motor Vehicles. The defendant also placed the signature of "M. D. Frissi" upon a 1943 automobile certificate of ownership made out to "M. C. Frassi, 3042 Grove Street, Oakland, Calif." The foregoing four documents were received in evidence.

When first seen by the witness, the registration card and automobile certificate of ownership, did not have a signature in any of the places provided therefor. The witness testified that he went next door and borrowed $665 from a finance company. A check therefor was issued by a Mr. Owen M. Dair and made payable to John Sykes, a business associate of the witness. After the check was properly endorsed, it was given to the defendant.

Mr. Abbott described the other two men who accompanied the defendant as of the age of approximately twenty years. The defendant stated that the automobile was being sold because his two younger associates were going into the Merchant Marine service. Later, on the afternoon of November 10th, the witness again saw the defendant who at that time was

alone, and stated that he was unable to cash the check and asked for another one made out to him personally. Accordingly, the Figueroa Auto Loan Company, who issued the original check, issued a second check payable to the order of M. D. Frassi for $665, which the witness, Abbott, handed to the defendant in the presence of Mr. Dair. The automobile in question was later returned to Mr. M. D. Frassi, from whom it was stolen.

According to the witness Abbott, when the defendant brought the automobile to the sales lot on the morning of November 10th, he was asked for some identification. In response to this request, defendant showed Mr. Abbott as identification a tire inspection report, a draft card (certificate of registration under the Selective Service Act) and an ''A'' book for gasoline, all of which papers contained the name, M. D. Frassi. The witness further testified that he has never received back any part of the $965 paid to the defendant in this transaction and that in addition he incurred expenses on the automobile for which he was never repaid.

The witness Abbott next saw the defendant when two police officers brought him to Abbott's office for identification, at which time the defendant denied knowing Abbott or that he had ever seen him before.

The next witness for the prosecution, Charles H. Dougherty, testified that he is an assistant cashier at the Hoover Branch of the Bank of America, having been employed there about sixteen or seventeen years; that on November 12, 1943, ''a party supposed to be M. D. Frassi,'' whom he identified in the courtroom as the defendant, presented the aforesaid check for payment. The witness asked the defendant to endorse the check and identify himself, at which time defendant exhibited a social security and ''draft'' card. This witness testified positively that he saw the defendant write the name ''M. D. Frassi'' on the back of the check, and also the address ''3042 Grove Street, Oakland, Calif.,'' whereupon he cashed the check and paid the defendant $665. On cross-examination the witness stated that there were some fifteen or twenty people standing in line when the defendant came in but that he remembered him because he was a stranger, tall and light complected, as well as because of his features and the ''build of him and all.''

Owen Dair, who testified for the prosecution, stated that he is engaged in the automobile finance business under the name

of "Figueroa Auto Loan Company." He corroborated the testimony of Mr. Abbott with reference to a loan of $665 on the automobile in question and he further testified with reference to the issuance of the second check, which he gave to Mr. Abbott in the presence of the defendant. This witness testified that he had "a good look" at the defendant and that he was "positive that this is the man that was there with Mr. Abbott at the time this check was given to Mr. Abbott."

John Tugwell, a witness on behalf of the People, testified that he is a detective attached to the forgery detail of the Los Angeles Police Department and one of the arresting officers in this case. That he took the defendant into custody on December 7th. He further testified that two other men, one named Cagney and the other DeWitt, both minors, had previously been arrested. This witness identified a white slip of paper upon which several signatures which appeared to be "M. D. Fraissi," spelled several different ways, were written, and testified that he saw the defendant write these exemplars.

Don E. Mire testified that he is a police officer of the city of Los Angeles, attached to the scientific investigation bureau as a handwriting expert. It was stipulated that he was "well qualified" as such an expert. He testified he had compared the signatures on the various documents signed in the presence of Mr. Abbott and Mr. Dougherty, the assistant cashier of the bank, with signatures appearing on the paper which Officer Tugwell testified he saw the defendant write. The witness testified that it was his opinion that the person who signed the name "M. D. Frassi" on People's Exhibits 1, 2, 3, 4 and 5 was the same person who wrote People's Exhibit 6. The witness stated that there was a dissimilarity in the "D" and also in the capital "F" on People's Exhibit 2, but that there were many other similarities in the remainder of the writings. After explaining the dissimilarities, the witness stated that, taking into consideration the similarities existing in the signatures, they were all written by the same person.

Marion D. Frassi, the owner of the automobile, testified that he lived at 3042 Grove Street, in the city of Oakland, California; that in the month of November, 1943, he owned a 1941 Chevrolet two door sedan; that on November 9, 1943, he left the vehicle in front of his house in Oakland about 5 o'clock in the evening; that when he returned some fif-

teen minutes later it was gone. He testified he did not give anyone permission to take the automobile nor to sign his name at any time in connection therewith. Next time he saw the vehicle was on November 13th or 14th in a used car lot in Los Angeles. The witness further testified that none of the signatures appearing upon the aforesaid exhibits were genuine, and that in some instances his name was misspelled.

Testifying in his own behalf, the defendant stated that he was not in Oakland "this year or last year"; that he lived there in 1940 or 1941, but had not been there since. That he met Mr. Abbott for the first time on the day of his arrest when he was brought to Abbott's used car lot. He denied signing any of the documents introduced into evidence as People's Exhibits. The defendant testified that he is a carpenter and on November 10th was working for one Henry Cox on a job in Long Beach; that his foreman James Sparks "picked him up" and took him to work where he arrived at 8 o'clock in the morning; that he worked all of the day of November 10th, as well as on the 11th and 12th. He further testified that he worked from 8 o'clock until about 5 o'clock in the afternoon, and that his foreman drove him home.

James H. Sparks, who is defendant's foreman, testified that he took the defendant to work at about 8 o'clock in the morning on November 10th; that the job upon which the defendant was working was at 2210 Chestnut Street in the city of Long Beach. The witness also testified that he did not remain at the place of defendant's employment all day, but did return in the afternoon and drove the defendant to the latter's home.

Dale DeWitt, testifying for the defendant, stated that he is 16 years of age, and at the time of the trial, was confined in the county jail; that prior to that time he was at the Preston School of Industry some three months. This witness testified that he was in Oakland in 1943 with another boy named Cagney; that he and Cagney stole the automobile here in question; that the defendant was not in Oakland at the time the automobile was stolen; that he did not see him in Oakland and that the defendant "did not have anything to do with the taking of the car." This witness testified that he and his companion drove the automobile to Los Angeles and sold it to a man whom he recognized in the courtroom as being Mr. Wilbur C. Abbott. The witness

testified that Mr. Abbott drove the vehicle around the block, checked the motor number to see if it corresponded with the one on the "pink slip" and that he, the witness, signed the "pink slip" and the bill of sale for the car under the name of "Frassi." This witness stated positively that the defendant was not present at any time during the negotiations for the sale of the automobile. The witness further testified that he was unable to cash the check on the day he received it, that the following day was Armistice Day and that he and his companion waited until the next day. He stated it was he who returned with the original check and secured the second check made out in the name of Mr. Frassi. The witness further stated that he practiced copying Mr. Frassi's name from a driver's license and some other papers belonging to Mr. Frassi which the witness found in the automobile. The witness further testified that he personally cashed the check and described the denominations in which the $665 was given to him. This witness testified that when he and his companion were arrested, the officers took $111 from Cagney and found five hundred and some odd dollars on the person of the witness. After the witness testified he was in the county jail, he was asked "for what," to which he replied "four counts of armed robbery and four stolen cars and forgery." He testified that the defendant was his cousin whom he had known since he was three years old.

The assistant cashier of the bank, Charles H. Dougherty, was recalled in rebuttal and testified he had never seen the witness Dale DeWitt, and further stated that he was certain the defendant was the man who cashed the check, because "he looked like a young man who used to go with one of my nieces."

Don E. Mire, the handwriting expert, was recalled and testified that, in his opinion, based upon a comparison of signatures made by the witness DeWitt with those on the People's Exhibits, that the witness DeWitt did not write the signatures appearing upon the aforesaid People's Exhibits. In support of his conclusion, he gave his reasons, pointing out dissimilarities in the various exemplars.

In support of his sole ground of appeal, which is "insufficiency of the evidence," appellant urges: (1) That a large sum of money was found on the persons of Cagney and DeWitt; (2) that Dale DeWitt testified that he was the

one who stole the automobile in Oakland, drove it to Los Angeles, sold the same to Mr. Abbott and received the sale price thereof; furthermore, the said DeWitt testified that he alone forged the name of the legal owner of the vehicle on the various documents introduced into evidence and that he alone cashed the check given in part payment of the purchase price; (3) that James H. Sparks testified that he took appellant to work on a construction job at Long Beach, some 20 miles distant from Los Angeles, on the morning of November 10, 1943, and returned the appellant from work about 4 o'clock on the same afternoon.

However, opposed to the foregoing was testimony of Marion D. Frassi, which clearly established the corpus delicti of the crimes charged against the defendant. Such being the case, it became necessary for the prosecution, in order to obtain a conviction, to prove only the participation of the defendant in such crimes. To that end the prosecution introduced the evidence we have hereinbefore narrated. ■ Such evidence consisted of testimony which positively identified appellant as being in possession of the stolen automobile, as the one who sold the same to Mr. Abbott, as well as being the person who signed Mr. Frassi's name to the bill of sale, the receipt, the automobile registration card and the certificate of ownership. The bank cashier testified that appellant endorsed the check in his presence, presented the same for payment and received the proceeds thereof, while Mr. Dair, of the automobile finance company, testified that appellant was the man who accompanied Mr. Abbott to the finance company office to obtain the second check issued in the sales transaction. A handwriting expert gave it as his opinion that appellant wrote the several signatures on the allegedly forged documents introduced into evidence and that Mr. De Witt did not, as he testified, sign the documents in question.

■ It is not within the province of an appellate tribunal to retry the case and to make inferences from the facts proved. That function belongs to the trial court. The appellate court is limited to deciding only whether upon the face of the evidence it can justly be held that sufficient facts could not have been found to warrant the inference of guilt. (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778].)

Unless we can say that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion

reached by the triers of fact, we are not warranted in directing a reversal of the judgment on the ground of insufficiency of the evidence to support it.

 Appellant does not contend that the incriminating evidence against him is either manifestly false or inherently improbable, but urges that it was outweighed, overbalanced and overcome by the testimony offered in opposition thereto. Undoubtedly, the testimony offered in contradiction of the prosecution's evidence and in support of appellant's alibi, afforded opportunity for a persuasive argument to the jury against the probability of appellant's guilt being established beyond a reasonable doubt, but we find nothing in the positive and direct testimony presented by the prosecution from which a reviewing court could justly conclude that such testimony is *per se* unbelievable, and that it was therefore the jury's duty not only to disregard it but to accept appellant's denial of any wrongdoing upon his part and to give full faith and credence to the testimony of DeWitt and the evidence offered in support of appellant's claimed alibi.

 Obviously, reviewing judges are in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. Undoubtedly, it is for that reason that our Constitution provides that the appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is obviously not a review of a question of fact but purely one of law. (*People* v. *Haydon,* 18 Cal.App. 543, 553 [123 P. 1102, 1114].) In conformity with the spirit and intent of this constitutional provision it has been ordained by the Legislature that the jury are the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847) and are also the judges of the effect and value of evidence addressed to them, save and except in those instances where it is declared by law that it shall be conclusive (Code Civ. Proc., § 2061). From the foregoing rules, it is manifest that the jury in the instant case were authorized, if they conscientiously felt warranted in doing so, after full and fair consideration thereof, to reject any testimony which was contradictory of that given by witnesses for the prosecution (*People* v. *Phelan,* 123 Cal. 551, 557 [56 P. 424] ; *People* v. *Wright,* 4 Cal.App. 704, 706 [89 P. 364] ; *People* v. *Turpin,* 10 Cal.App. 526, 530 [102 P. 680] ). It is very clear from the

verdict, that the jury concluded that on November 10, 1943, the appellant was not working on the job at Long Beach, but was at the used car lot of Mr. Abbott and sold him the stolen automobile; obtained the money and check paid therefor and cashed the check in question. How can this court determine how the testimony given in contradiction of evidence of those facts impressed the jury? It may be that the very manner of the witnesses giving such testimony was itself, in the judgment of the jury, a complete contradiction of the truth of their statements. It may be (and who can gainsay their right to do so?) that the jury felt justified in disregarding *in toto* the testimony of appellant and the witnesses produced in his behalf. And if they did, may an appellate tribunal declare that they were wrong in so doing and in effect say to the jury "You misinterpreted the manner in which appellant and the witnesses produced by him testified; you should have given their statements full weight and credit, and should have disregarded the positive and direct testimony in contradiction thereof." Were this court to assume the position just described, we would clearly be invading the province of the jury by passing upon the weight of testimony and the credibility of witnesses. Where witnesses have testified in direct opposition to each other, no one has ever doubted the right of a judge or jury to believe one witness as against another. Common experience and knowledge teaches us that the most complete and conclusive contradiction of the truth of a witness' testimony is his own manner on the witness stand when giving it. The peculiar advantages which juries and trial judges have of determining whether witnesses are entitled to credence, not upon what they testify to, but by their manner of testifying, has given rise to the familiar rule that reviewing courts will not and cannot set aside verdicts of juries or findings of the trial court based upon evidence on which there appears to exist a substantial conflict.

Furthermore, it must be remembered that a motion for a new trial was made in the case with which we are here concerned and denied by the trial judge. He also had the witnesses before him, was fortified with an opportunity to observe their manner and demeanor on the stand, their apparent candor or absence of the same, and the reasonableness or unreasonableness of the statements they made. Unless he believed the testimony of the People's witnesses and disbelieved the testimony proffered by the defense in contradic-

tion thereof, it was not only his privilege but his duty to grant a new trial. By his action in denying the motion for a new trial, the judge of the court below concurred in the verdict of the jury which rejected, as they had a right to do, the testimony offered by appellant and accepted as true evidence given by the prosecution witnesses.

For the reasons herein stated, the judgment and the order denying defendant's motion for a new trial are, and each is, affirmed.

York, P. J., and Doran, J., concurred.