[Crim. No. 3996.   Second Dist., Div. One.   July 25, 1946.]

THE PEOPLE, Respondent, v. MARTHA SAMSON, Appellant.

Ray L. Smith for Appellant.

Robert W. Kenny, Attorney General, and L. G. Campbell, Deputy Attorney General, for Respondent.

YORK, P. J.—As a result of a jury trial, defendant was found guilty of the crime of assault with a deadly weapon, as charged in the information filed herein. She appeals from the judgment of conviction, asserting that the evidence adduced at said trial is insufficient to support such judgment.

The assault occurred under the following circumstances: Mrs. Lou Nell Fullerton, the person assaulted, in company with her husband and a Mr. Smith drove up to the curb of a Los Angeles city street about nine o'clock in the evening of September 12, 1945, and alighted from an automobile. Mrs. Fullerton testified that "We were just stepping out of the car, my husband and Mr. Smith, they just stepped out of the car, and we were starting to walk down the street when the marine came up. . . . We were sightseeing and were looking for something to eat, some shrimps . . . while we were waiting for Mr. Smith to come from locking the car, this marine stepped up and he put his arm around my waist and he said, 'I will take this one.' . . . And the boy, my brother-in-law,— this friend, Mr. Smith, stepped up and he identified himself as the Shore Patrol, and the fellow first knocked my husband —he knocked my husband down and he first called him a 4-F man, and he was just discharged from the Navy a week before, and he said, 'Hell, I don't want any trouble with you.' And when he knocked my husband down, all the other marines came up, and I was standing by the car and Miss Samson came up from behind me and got my arms and turned them behind me. . . . I said, 'What do you mean?', and she said, 'Just be still and you will find out.' And she knocked me down on the sidewalk, and when she did, I finally got up and she knocked me down again, and I got up· and she got me up against the wall and cut me with a bottle. . . . She broke the bottle and cut me in the arm. . . . Like this (indicating)

. . . and she said, 'I will cut your eyes out,' and when she did, I threw up my arm and she cut my arm, here. . . . It was a beer bottle.'' Said witness testified that the muscle of her arm was cut necessitating the taking of twenty-eight stitches in her arm; that she had received medical attention ''three times and maybe I will have to have another operation''; and was still under the care of a doctor. The husband of the prosecuting witness, Mr. Grady Fullerton, testified: ''One boy came up and grabbed my wife around the waist . . . and I was asking him to leave my wife alone, and then they came up and one boy hit me. . . . She (appellant) grabbed her by the arm and threw her down on the sidewalk. . . . She came from behind one time and grabbed her by the arm. . . . I was fighting with the marines. . . . Part of the time I was up. . . . I heard my wife holler 'Leave me alone,' and I looked up and saw she (appellant) had hold of her (prosecuting witness) . . . my wife finally got loose, and she (appellant) broke this bottle on the sidewalk or on the curb.'' That he saw the bottle in appellant's hand; that he was then fighting with the marines, who still had hold of him; that he was trying to get loose and get to his wife; that he did not see everything that was going on, but he saw enough to know that appellant cut his wife, that appellant had the bottle in her hand, and he saw appellant beating his wife's head on the sidewalk; that he saw no one else strike his wife.

Police Officer McCaughin testified that he and Officer Sloan were sitting in a police car on the northwest corner of 18th and Main Streets; that they observed the fight, and as they approached the scene ''Mrs. Fullerton was on the sidewalk and Mrs. Samson was on top of her . . . they were scrapping, fighting each other. At the time we approached Mrs. Samson was—— had her (Mrs. Fullerton) by the hair of the head and was beating her head on the sidewalk''; that his brother officer pulled out his police badge and stated who they were, and Officer McCaughin took Mrs. Samson by the arm in an effort to break up the fight and get her out of the crowd; that the group of marines jumped on him at that time and he ''hit the sidewalk''; that he observed that Mrs. Fullerton was injured. ''She had quite a bit of blood on her; her arm was cut, the forearm of the left arm. . . . She had blood all over her clothes and coat''; that both the Fullertons were sober at the time of the altercation.

The records of the Georgia Street Receiving Hospital were

introduced which showed that Dr. Nador made a diagnosis of Mrs. Fullerton's injuries as "a four inch laceration of the left forearm with severance of the pronator muscle."

Appellant took the stand in her own defense, and testified that Mrs. Fullerton was in the midst of the fighting and was being pushed around "so I went over and took her by the hand and pulled her away, and told her to be careful or she would get hurt. So she just stood there with me for quite a little while; we were watching them fight. Then she started back and I caught hold of her and then she whirled and hit me. So when she hit me we started fighting. . . . She hit me in the face and then got hold of my hair. . . . There is a big place pulled out right here (indicating)." She denied that she had any bottle or any glass in her hand but that when she fell to the ground she saw glass and felt it too, having been cut on the knee; that she held Mrs. Fullerton by the hair, but did not remember bouncing her head up and down on the sidewalk; and that her first interest in Mrs. Fullerton was to see that she did not get hurt in the fight.

In the light of the evidence presented, it was for the jury to decide which story was the truth, and having decided, it is not within the province of an appellate tribunal to disturb the judgment based thereon. As stated by this court in *People* v. *Ohman,* 67 Cal.App.2d 467, 474 [154 P.2d 463] : "It is not within the province of an appellate tribunal to retry the case and to make inferences from the facts proved. That function belongs to the trial court. The appellate court is limited to deciding only whether upon the face of the evidence it can justly be held that sufficient facts could not have been found to warrant the inference of guilt. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

"Unless we can say that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached by the triers of fact, we are not warranted in directing a reversal of the judgment on the ground of insufficiency of the evidence to support it."

The judgment of conviction in the instant cause is abundantly supported by the evidence.

The judgment is affirmed.

Doran, J., and White, J., concurred.