[Crim. No. 2085. Second Appellate District, Division Two.—July 10, 1931.]

THE PEOPLE, Respondent, v. HARRY JENNERJOHN, Appellant.

Jones, Tatlow & Meloy for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—Appellant was charged with the crime of grand theft, to wit: Stealing an automobile, in count one of the information, and with violation of section 146 of the California Vehicle Act, under a second count. The second count was dismissed but appellant was convicted under the first count by trial without a jury. From this judgment he appeals, assigning but one ground of appeal, to wit: The insufficiency of the evidence to sustain the judgment.

The evidence showed that on or about the nineteenth day of January, 1931, the prosecuting witness, Francisco Ledesma, parked his Ford touring car at Ninth and Soto Streets, in the city of Los Angeles, at about 9:30 in the morning; he was away from it for about five minutes, and upon his return found it was gone; the car was found by police officer Bradley in an open field about 11 A. M. of the same day, with the defendant standing beside the automobile. The police officer testified that the spare tire was on the ground, the battery out of its container, the carburetor removed from the motor and lying on the running-board, gasoline was spilled on the running-board, a couple of wrenches and a pair of pliers were lying on the running-board, and all the nuts were taken off the bolts that held the tires on. He further stated that he found none of the nuts lying about that had been removed from the rims of the tires, but that after he had searched the defendant he found six or seven nuts in his pocket, such as are used on the rims of Ford automobiles, together with a few short bolts, keys and other miscellaneous objects; that defendant's hands were dirty and greasy and that "it was fresh and wet grease and oil". He further testified that he told defendant to get into his car and drive over to the boulevard, and that defendant then entered an old Ford touring car that was standing beside the road; that he, the witness, then called another police officer, who came to the field where the Ledesma car was standing; that the second police officer told the boy "it looked pretty bad for him, and Jennerjohn said it didn't look so good", and that "we checked the parts for prints and we looked at the parts of the car lying on the ground, and felt of the radiator and the radiator was hot".

Another witness, a deputy sheriff, testified that on the evening of the same day, in the presence of another deputy

sheriff, the defendant made a statement to him in which he related his actions that day from the time the car was stolen until it was found. His statement was as follows: That defendant, together with one Harold Provin, left their home about 9 o'clock in the morning, defendant driving his Cadillac roadster and Provin driving the old Ford touring car that was standing beside the road at the entrance of the field where the Ledesma car was found; that they drove to 9512 Laurel Avenue, where Provin left his Ford touring car, both of them getting into appellant's Cadillac; that they drove north on Alameda Street to the vicinity of the Southern Pacific freight-sheds on North Alameda, where they "tried to start a Ford touring car they found sitting there", and that "they couldn't get that one because it was locked, the steering wheel was locked, and they had no keys for it". That they both got back in the Cadillac and drove through Boyle Heights to the vicinity of Ninth and Soto, where appellant stopped his Cadillac, Provin getting out and entering the parking lot of Sears & Roebuck; that appellant then drove south on Soto Street to 9512 Laurel Avenue; that while he was driving along Soto Street Provin passed him driving the Ledesma automobile; that when they arrived at the address on Laurel Avenue appellant parked his automobile and got into Provin's old Ford touring car; that they both turned around, going south on Alameda Street to Dominguez Road, turned to the left and went about a mile across the railroad track to the entrance of the pasture or field where the Ledesma car was found; that appellant then stated he parked Provin's Ford touring car beside the road, Provin driving the other car (the Ledesma car) about seven or eight hundred feet south of Dominguez Road beside the Edison Company high line, and "they both started to take the tires off, and they took the battery out if it, the manifold, the carburetor, and loosened the nuts on the radiator, and about that time, he said, Provin saw a fellow watching them and they figured it was an officer, so Provin ran across a pasture and up over a storm drain and across the tracks and was on his way. And he said this man kept watching him and he finally walked away from the car (the Ledesma car) toward where he had his Ford touring car parked, when he was arrested." The witness then stated that later on that evening appellant repeated this statement in the

presence of Provin and the two deputy sheriffs and that Provin denied any connection with it whatsoever.

At the trial of the case appellant denied having made the statement as related above by the deputy sheriff. He accounted for his actions on the day of the theft by testifying that on the morning of the 19th he was driving his Cadillac down to the place where he was employed; that he met Provin about Ninety-seventh and Hickory Street and the latter wanted him to stop and fix his car, but that defendant told him he did not have time to do so as he had to see his employer on St. Louis Street; that Provin then asked defendant to take him up to North Main Street, which defendant did; that Provin went into a place, apparently looking for work, but soon came out again and that he and Provin then drove to Ninth and Soto, where he left Provin at the entrance of Sears & Roebuck's store; that he, the appellant, then proceeded down Soto and that Provin passed him in a Ford automobile (the Ledesma car); that when they reached Ninety-fifth and Laurel Avenue Provin told him to "take my Ford touring car and find out what is wrong with it and follow me"; that appellant was then on his way to Virginia City to get an estimate on some cars for his employer; that Provin pulled into a field with the Ford automobile (the Ledesma Ford) and told defendant to meet him on the way back from Virginia City; that when he, appellant, returned he found Provin on the car tracks; that appellant "walked—got within 50 feet of the car, that is" (the Ledesma car) "when Mr. Bradley drove up in his Ford coupe in front of my car. I was there just about a second, walked around the car, looked down underneath the hood, turned around and come back out again. Mr. Bradley encountered me and he asked me what I was doing. I said, 'I am looking at the car.' He says, 'Do you know who that car belongs to?' I said, 'I do not.' He says, 'Let's go down and take a look at it', so we walked back and took a look at it and found parts of the car", that the officer "asked me whether I had done it, whether I had taken anything off of it, and I told him no, I hadn't, because I had just arrived." The appellant further testified that he did not drive the Ledesma car or take any parts away from it; that he was an automobile mechanic and that his business was appraising automobiles for second-hand places.

■ The evidence in his case, exclusive of appellant's extrajudicial statements to the deputy sheriffs, points very strongly to appellant's guilt. He testified that Provin's own car had been left earlier in the morning at the address on Laurel Avenue, and yet a short time later Provin passed him on Soto Street driving another Ford automobile, and that later on he, appellant, drove Provin's own car while Provin drove the Ledesma car to the field at which the Ledesma car was found. This testimony itself tends to support the conclusion that appellant was knowingly assisting in the theft and by reason thereof was guilty of the crime charged. (Pen. Code, sec. 31.) Furthermore, appellant was found in the immediate neighborhood of the stolen car shortly after it had been stolen; the car had a number of its parts removed, the radiator was still hot, appellant's hands were dirty, and according to one witness it was "fresh and wet grease and oil". In the case of *People* v. *Roldan,* 93 Cal. App. 677 [270 Pac. 253], it is said:

"The firmly established rule of law is that 'when a person is found in possession of recently stolen property slight corroborative evidence of other inculpatory circumstances tending to show his guilt will support a conviction.' (*People* v. *Cataline,* 54 Cal. App. 36 [200 Pac. 1060].)"

It cannot be said, after a consideration of all the testimony in this case, that there was not sufficient evidence to sustain the judgment.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.