[Crim. No. 620. Fourth Dist. May 20, 1943.]

THE PEOPLE, Respondent, v. ARTHUR R. FELIX et al., Appellants.

N. D. Meyer and Winthrop O. Gordon for Appellant.

Robert W. Kenny, Attorney General, and Alberta Belford, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendants and appellants were jointly charged with a felony, to wit, possession of a blackjack. They were tried without a jury and found guilty. Their appeal is taken from the judgment of conviction. But one point is made upon this appeal and that is that the evidence is insufficient as to any of the defendants to justify the conviction. The defendants concede that the instrument found in the car was a blackjack as defined by the Dangerous Weapons Control Law of 1923, as amended (Deering's Gen. Laws, 1937, vol. 1, Act 1970, p. 993 [Stats. 1923, p. 695]).

The evidence shows that on the night of November 15, 1942, there was a "free for all" fight at a dance hall at Independencia, a small locality in Orange County; that most of the persons who attended the dance were Mexicans; that a great number of the young men wore "Zoot suits." According to the testimony of the defendants, they arrived at the dance just a few minutes before the fight started. All three admitted being involved in the fight. Two of them bore cuts and all

three pleaded guilty to a charge of disturbing the peace arising out of the fight there that night. When that fight ceased, the defendants, apparently by common design, returned to the automobile in which they had arrived. The automobile belonged to and was driven by the defendant Monteverde. As they were driving away from the scene they were stopped by officers, arrested, and a blackjack was taken from the car. At the time they were arrested Monteverde and Felix were riding in the front seat. The blackjack was lying directly under Monteverde's knees on a rubber mat on the floor. It was covered with blood. Felix's hand was bleeding profusely. Defendant Anaya, who was seated in the back seat of the car, "had blood all over him." There was an empty bottle in the front seat of the car on the right-hand side which also had blood on it.

█ It is appellants' contention that the evidence is not sufficient to show a joint possession or control of the blackjack by all of the defendants so as to support their joint conviction of the crime charged; that the circumstances surrounding the existence of the blackjack in the car in question were "consistent with many reasonable theories of innocence of the defendants."

There was ample evidence to have justified the court in concluding that a blackjack was used at the fight by defendant Felix. One witness testified that he (the witness) was seated in his car just outside the dance hall; that "There was a big bunch arguing and I recall that Arthur (Felix) was in the middle of it. There was a young girl asking him not to fight. She says, 'Don't fight', and he says, 'It doesn't make any difference to me. I want to whip the man here'. He wanted to strike a middle-aged man. . . ." The witness then testified: "Well, the lights were put out and then the bunch of young boys that were there in the group scattered, and glass was heard broken, and then at that time I got out of my car and I noticed about six yards away from me that there was a man on the ground, they were stabbing him like this (indicating), a downward motion. I could see that he had an iron, a piece of iron of some kind, but I didn't know what it was. What I did then was to try to separate them. I did that and the man that was lying on the ground got up and left. To one side of me was my brother, and then the whole bunch of them jumped on us all of a sudden, and

my brother and I run, but I didn't run very far because they caught up with me, and I didn't know what happened to my brother then after that. The first one that caught up with me struck me right now . . . On the face here . . .'' with ''Something heavy . . . I fell to the ground. I could feel that I was being cut all over my body and kicked.''

One other witness testified that ''About that time I saw those eight fellows coming toward me, and I tried to talk to them, and they backed me up against the corner of the hall there . . . one closed in on me from one side, and then another one, and about that time I felt a blow on the head (indicating over the right upper portion of the head) and I fell then on this blow, and they piled on top of me and after that I don't know what happened. Q. Was that a blow from a fist or some instrument? A. Some kind of an instrument because I felt the downward blow on my head.''

Another witness testified that ''When I got there I just got hit four times in the head, two in the forehead and two in back . . . Q. Was that with a fist or some instrument? A. Some instrument . . . I just went down. They (the bruises) were sunk, but no blood come out of them . . . it did not break the skin . . . Q. But those two on the front of your head did break the skin? A. They did; they break my skull.''

There were bottles found in the back seat of the car in addition to the one with blood on it found in the front seat. The circumstantial evidence here presented is amply sufficient to have justified the court in concluding that the three boys were operating as a ''gang,'' with knowledge on the part of each as to the manner in which the operation was to be carried out when they arrived at the dance; that the presence of the blackjack was known to each of them both prior to and after the affray; and that it was used by at least one of them during the fight in which apparently all of them were engaged.

Although the defendants profess their entire innocence as to the possession of the blackjack and as to their participation in starting the fight, there is testimony that Felix ''wanted to whip a man''; that he was in the argument; that immediately thereafter the lights went out and there was a sound of the breaking of glass and that a man was struck over the head with a blunt instrument which did not break the skin. Felix further testified that ''I pushed him back and hit him when

he went back. Q. And you knew that was disturbing the peace? A. It was kind of starting a fight there.'' The fight started within a few minutes after these defendants arrived. The damage seemed to have been done with broken glass and a blunt instrument. Two of the defendants, Anaya and Felix, had cuts on their hands. The blackjack was in Monteverde's car under his feet. His hands were not cut. This might indicate that Monteverde wielded the blackjack and Felix and Anaya wielded the bottles.

There is sufficient evidence to hold that the possession of the blackjack was a crime chargeable to all of the defendants and that all of them, for the purposes here involved, knowingly had possession of it. (*People* v. *Gonzales*, 72 Cal.App. 626 [237 P. 812].)

Defendants argue that from the evidence it might be just as reasonable to believe that some other persons did the striking with the blackjack, and in their effort to get rid of it threw it in defendants' car. This may have been a proper argument to a jury or to the trial court, but in the face of the court's conclusion and the evidence, we are impelled to believe that the trial court's conclusion is at least equally tenable, i. e., that the defendants were the ones who used the blackjack, who knew of its presence both before and after the fight, who put it in the Monteverde car, and for this purpose, at least, had joint control or possession of it. If the circumstances shown in evidence reasonably justify the findings of the trial court the opinion of the reviewing court that those circumstances might also be reconciled with the innocence of the defendants will not justify a reversal of the judgment. (*People* v. *Del Prado*, 49 Cal.App.2d 597 [122 P.2d 76].)

An order denying probation is not appealable. (*People* v. *Bartley*, 12 Cal.App. 773 [108 P. 868].) The attempted appeal therefrom is dismissed.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 17, 1943.