[Crim. No. 5170.   In Bank.   Feb. 20, 1951.]

THE PEOPLE, Respondent, v. JACOB WISSENFELD, Appellant.

760

Enger & Hiller and Louis Thomas Hiller for Appellant.

Fred N. Howser and Edmund G. Brown, Attorneys General, and William E. James, Deputy Attorney General, for Respondent.

SPENCE, J.—Defendants Jacob Wissenfeld, Robert Victor Luke, and Karyl Dorothy Diltz were jointly charged with the crimes of (1) grand theft of an automobile, and (2) violation of section 13 of the Dangerous Weapons' Control Law of 1923 as amended, dealing with tampering with identification marks on firearms. (Stats. 1923, ch. 339, p. 695; 1 Deering's Gen. Laws 1937, Act 1970, pp. 993, 999.) Defendant Wissenfeld was also charged with having theretofore been convicted of two separate felonies: (1) robbery and (2) assault with intent to commit robbery. Upon arraignment, each defendant pleaded not guilty. At the commencement of the trial these proceedings were had: (1) the court, upon defendant Wissenfeld's waiver of a jury trial on the issue of the status of his two alleged prior convictions, found them to be true as charged; and (2) defendant Luke changed his plea from not guilty to guilty on the two counts. Following a trial by jury, defendant Wissenfeld was convicted on both counts and defendant Diltz was acquitted. Defendant Wissenfeld appeals from the "conviction" and the judgment rendered thereon.

As grounds for reversal, appellant urges: (1) the insufficiency of the evidence to sustain the verdicts; (2) error in the allowance of certain cross-examination of defendant Luke; and (3) misconduct of the trial court in instructing the jury. A review of the record negatives the force of appellant's respective claims and establishes that his conviction resulted from a fair trial.

On September 16, 1949, appellant, accompanied by defendants Luke and Diltz, was driving a 1941 Buick sedan automobile when he was stopped by two police officers. The officers' attention had been attracted to the Buick car because its rear license plate "was obviously wired on and was swinging." In the ensuing conversation with the officers, appellant, when asked "what seems to be the trouble with your license plate," looked at it and said that he thought "it would stay on." Upon then being asked if "the car belonged to him," appellant refused to answer and only volunteered several times that he "was staying at the Wilton Hotel." Following further questioning by the officers as to the ownership of the car, appellant finally said that it belonged to a friend but that "he didn't know" the "friend's name." The Buick car was then searched by the officers and two guns—an automatic and a .32 calibre revolver—wrapped in a paper bag were found in the glove compartment. The numbers on the revolver had been obliterated. When asked who owned the guns, all defendants remained silent. Defendants were then put under arrest.

At the trial the owner of the Buick car testified that she had parked her car in front of her house on the evening of August 22, 1949; that the next morning when she wanted to use it on an errand, she found that it was gone; that it had been locked while parked on the street, that she did not know defendants, and had given no one permission to use her car. She further stated that the license plate found "swinging" on the car at the time of the arrest of defendants was not hers; and that she had never seen the guns taken from the glove compartment of the car prior to the time of the preliminary hearing in this case.

Following his arrest, appellant was questioned again by the police officers. He still persisted that the Buick car belonged to a friend, but he would not give the name. When asked about the guns found in the car, he replied "What guns?" and refused to make any further answer. When queried about "the '41 Buick," he responded, "What car"; that he did not recall anything about it; that if he was driving the car at the

time of his arrest, he must have been doing so while asleep; that there would be nothing unusual about that because a "good many people, including himself," do things—"walk places, drive cars and everything else"—"while asleep." Appellant also told the police officers that he was a gambler by trade, and that he had known his codefendant Luke for a couple of months.

One Patricia Carroll testified that she had met appellant in the early part of September, 1949, and knew him as a bookmaker; that she had ridden in the Buick car on a number of occasions with appellant and his codefendants; that several times after various "dates" appellant had driven her home alone; that he had told her that the car "did not belong to him," that he "couldn't have anything in his name because he was involved in some transaction," and that all "his money was tied up" in certain litigation.

Defendant Luke testified on behalf of appellant and admitted his own guilt on both counts. He stated that he first met appellant at a certain night club on August 27, 1949; that appellant hired him as a chauffeur to "drive him around to certain places in Hollywood and Beverly Hills and through Los Angeles to make bets and to pick up collections"; that he had never told appellant that the Buick car was stolen. On cross-examination, he was asked about traveling to various racetracks with appellant and, in particular, about a bus trip to Reno with appellant—a trip which he purportedly admitted having made according to a statement given to the police officers following his arrest, but which he denied at the trial. Appellant's counsel objected to such line of questioning but his objection was overruled, and defendant Luke testified that his previous statement to the police officers was false. Defendant Luke admitted that at the police station after his arrest, when he was interrogated about various matters pertinent to the possession and ownership of the Buick car and the guns, he had "refused to answer a lot of questions" with the statement "I better not talk now"; that he had never told any of the officers about his having stolen the car or having the guns but had maintained that he knew nothing about them; that the first time that he ever said anything connecting himself with the theft of the car or the possession of the guns, and tampering with the numbers thereof, was when he "pleaded guilty" in court at the commencement of the trial, followed by his testimony as a witness the next day. Defendant Luke further testified that he had purchased the guns in May,

1949, from a "fellow" he "met . . . in a bar," and that he then filed the "numbers" off the revolver; that when he went to work later for appellant, the latter did not know anything about the guns or that he kept them in the car. Defendant Luke also testified on cross-examination as to the condition of the guns when found in the glove compartment of the Buick car at the time of arrest.

Appellant did not testify nor did defendant Diltz. There was evidence that when appellant was being questioned after his arrest, he offered to plead guilty to a violation of the weapons' law in the particular constituting count 2, if he could be guaranteed a county jail sentence.

It is apparent that the jury did not believe defendant Luke's claim as to his sole commission of the two crimes in question and his complete exoneration of appellant in connection therewith, but rather chose to believe the evidence pointing to appellant's guilt as charged. ██ So pertinent are these matters in the record relative to count 1, grand theft of the automobile: (1) appellant's driving of the stolen car when apprehended; (2) appellant's false and equivocal statements to the police when queried as to the ownership of the car, and his claim that if he was driving at the time of his arrest, he must have been "asleep" (*People* v. *Cole,* 141 Cal. 88, 90 [74 P. 547]; *People* v. *Gibson,* 64 Cal.App.2d 537, 539 [149 P.2d 25]; *People* v. *Turner,* 86 Cal.App.2d 791, 801 [195 P.2d 809]); (3) appellant's accompaniment in the car by defendant Luke, who claimed that he had stolen the car (*People* v. *King,* 122 Cal.App. 50, 53 [10 P.2d 89]) and who testified that he used it with appellant in the bookmaking business; (4) appellant's need for a car in making his gambling collections and his not wanting to have one in his own name as a motive for the theft of the car (*People* v. *Renteria,* 60 Cal.App.2d 463, 471 [141 P.2d 37]); (5) appellant's exercise of dominion over the car at various times for both business and pleasure; and (6) appellant's failure to take the witness stand and offer some explanation of the suspicious circumstances (*People* v. *Miller,* 45 Cal.App. 494, 495-496 [188 P. 52]; *People* v. *Renteria, supra,* 60 Cal.App.2d 463, 472). ██ While the mere possession of stolen property is not alone sufficient to sustain a conviction of grand theft (*People* v. *Haack,* 86 Cal.App. 390 [260 P. 913]), such possession plus "slight corroborative evidence of other inculpatory circumstances" will suffice. (*People* v. *Holland,* 82 Cal.App.2d 310, 312 [186 P.2d 58];

see, also, *People* v. *Leary,* 28 Cal.2d 727, 735 [172 P.2d 34] ; *People* v. *Cataline,* 54 Cal.App. 36, 38 [200 P. 1060] ; *People* .v. *Fain,* 100 Cal.App. 439, 440 [280 P. 162] ; *People* v. *Jennerjohn,* 115 Cal.App. 447, 451 [1 P.2d 532] ; *People* v. *Swanson,* 120 Cal.App. 173, 176 [7 P.2d 380] ; *People* v. *King, supra,* 122 Cal.App. 50, 53.) The time period between the date of the theft and appellant's arrest when in possession of the stolen car—some 25 days—was but another circumstance for the jury's consideration in determining the matter of his guilt in the light of the evidence that he had been driving the car on various business and social trips during that period. (*People* v. *Miller, supra,* 45 Cal.App. 494, 496-497.) Appellant's reliance on the case of *People* v. *Zervas,* 61 Cal.App.2d 381 [142 P.2d 946], is of no avail, for there it was only held that defendant's mere occupancy of a stolen car as a passenger but without other suspicious or incriminatory circumstances was insufficient to sustain his conviction.

With respect to the evidence bearing on count 2, tampering with identification marks on firearms, these matters in the record appear to be significant: (1) appellant's possession and driving of the stolen car when apprehended, correlated with the presence of the guns in the glove compartment of the car over which he was exercising control at that time (*People* v. *Felix,* 58 Cal.App.2d 646, 648 [137 P.2d 472] ; *People* v. *Smith,* 72 Cal.App.2d Supp. 875, 877 [164 P.2d 857] ; see, also, *People* v. *McKinney,* 9 Cal.App.2d 523, 524-525 [50 P.2d 827] ; *People* v. *Noland,* 61 Cal.App.2d 364, 366 [143 P.2d 86]); in making applicable the presumption that the possessor committed the crime of tampering with the identification marks (*People* v. *Scott,* 24 Cal.2d 774, 779-783 [151 P.2d 517]) ; (2) appellant's silence when confronted with the weapons at the time of his arrest and questioned as to their ownership, and then his later equivocal statements to the police in an attempt to ward off further queries as to the reason for the presence of the guns in the car (*People* v. *Gibson, supra,* 64 Cal.App.2d 537, 539; *People* v. *Turner, supra,* 86 Cal.App.2d 791, 801) ; (3) appellant's need for the guns in his "collection" activities in connection with his bookmaking business; and (4) appellant's offer to plead guilty to the alleged violation constituting count 2 if he could be guaranteed a county jail sentence—as an admission of guilt (8 Cal.Jur. § 194, pp. 98-99; *People* v. *Dunlop,* 27 Cal.App. 460, 466-467 [150 P. 389] ; *People* v. *Boyd,* 67 Cal.App. 292, 302-303 [227 P. 783] ; *People* v. *Sanderson,* 129 Cal.App. 531,

532-533 [18 P.2d 982]; *People* v. *Cooper,* 81 Cal.App.2d 110, 117-118 [183 P.2d 67]).

The foregoing summary of the evidence shows that appellant's objection to the sufficiency of the evidence to warrant his conviction on the two counts is not well taken. ██ It is of no avail to appellant to cite the testimony of his codefendant Luke in an attempt to establish that the latter was the sole perpetrator of the two crimes charged, for the matter of the credibility of Luke's exonerating testimony was for the jury to resolve, and it is apparent that little reliance was placed thereon in view of his previous denial of guilt and the other evidence in the case. (*People* v. *Zabriski,* 135 Cal.App. 169, 172 [26 P.2d 511].) ██ "No rule of criminal law and procedure is better established in this state" than that where "there is substantial evidence tending to support the verdict of the jury, . . . this court cannot, as a matter of law, substitute its judgment on the facts for that of the jury." (*People* v. *Tedesco,* 1 Cal.2d 211, 219 [34 P.2d 467]; see, also, *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Pianezzi,* 42 Cal.App.2d 270, 277 [108 P.2d 685]; *People* v. *Ohman,* 67 Cal.App.2d 467, 474-476 [154 P.2d 463].)

Nor may appellant prevail in his attack upon the extent and scope of the cross-examination of defendant Luke. ██ First to be considered is his complaint as to the questions propounded with regard to a bus trip to Reno. At the trial defendant Luke denied having made the trip and, for purposes of impeachment, respondent's counsel undertook to read into the record a previous statement made by defendant Luke to the police wherein he had admitted having taken such trip. (Code Civ. Proc., §§ 2051, 2052.) Appellant's counsel objected on the ground that it was an attempt to "impeach the witness on immaterial grounds." (*People* v. *Furtado,* 57 Cal. 345, 346; *People* v. *Dye,* 75 Cal. 108, 112 [16 P. 537]; *Moody* v. *Peirano,* 4 Cal.App. 411, 416 [88 P. 380].) In response to this objection, respondent's counsel urged the propriety of the cross-examination not only for the purpose of showing contradictory statements made by defendant Luke with regard to this trip as a test of his credibility (27 Cal.Jur. § 121, p. 145) but also as bearing upon the close business and social relationship between the two men, which association the witness had apparently attempted to minimize in his testimony. The trial court overruled the objection. ██ In the field of cross-examination affecting the credibility of a witness, the court is given a wide discretion (Code Civ. Proc., § 1868), and

"[u]nless it can be seen that the evidence is without any weight whatever in determining the issue the action of the court in receiving it will not be reversed." (*Moody* v. *Peirano, supra,* 4 Cal.App. 411, 418.) The credibility and weight to be given to the testimony of defendant Luke was a vital matter in the case, and there appears to be no error in the ruling of the trial court admitting the above-mentioned impeaching evidence for the consideration of the jury.

Appellant also complains of the cross-examination of defendant Luke with respect to the condition of the guns when they were found by the police in the glove compartment of the stolen car. Irrespective of any argument sustaining the admissibility of this testimony, no objection was interposed in the trial court and the point need not be considered upon appeal. (8 Cal.Jur. § 516, p. 500.) Moreover, there is no showing as to how this cross-examination might have operated to the prejudice of appellant. (Const., art. VI, § 4½.)

Likewise there is no force to appellant's claim that the trial court was guilty of prejudicial misconduct in its additional instructions to the jury. It appears that the jury, contrary to explicit instructions, returned against appellant a verdict of guilty on the grand theft count and also for the violation of Vehicle Code, section 503 (taking and driving an automobile without the consent of the owner and with intent to deprive the owner of its title and possession). The court then said: "As to the verdicts on 503, Grand Theft, you cannot find the same defendants guilty of both offenses. You must find the defendants guilty of one or the other. I don't know what your thought about it was, which one you intended to bring in, but you cannot bring in both. I am going to send you out again and you may come back with one or the other of these verdicts and indicate to us which one you want to be the verdict." Within a few minutes the jury returned with a corrected verdict. Inasmuch as this correction was made after the jury had found appellant guilty on both grounds, the court's instruction that the jury make its choice between the two verdicts already reached (*cf. People* v. *Jeffries,* 47 Cal.App.2d 801, 807-808 [119 P.2d 190]) certainly should not, as contended by appellant, be construed as reflecting a feeling of any hostility toward appellant or as a remark operating to his prejudice. (*Cf. People* v. *Daily,* 135 Cal. 104, 107 [67 P. 16].)

Appellant also argues in this regard that the additional instruction was given to the jury in the absence of both

himself and his counsel. There is no merit to his position. The record shows (1) that counsel stipulated in open court at the outset of the trial that "each defendant [was] in the courtroom . . . unless the attention of the Court [was] called to the contrary"; and (2) that upon the retirement of the jury, both appellant and his counsel stipulated that the verdict might be received in the absence of counsel. Moreover, it appears that appellant was present in court at the time in question, for immediately following the jury's return with the corrected verdict, appellant asked if he might "have a new trial" and the court ordered the record to show the making of such request as an "oral application." ▮ Consistent with the well-settled rule on appeal that "all intendments and presumptions not contradicted by or inconsistent with the record are in favor of the regularity of the proceedings" in the court below (8 Cal.Jur. § 568, p. 569), it must be concluded that appellant was present at all stages of the proceedings in the trial court. (Pen. Code, §§ 1138, 1148.)

The purported appeal from the "conviction" is dismissed. The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

Schauer, J., concurred in the judgment.

CARTER, J.—I concur in the judgment of affirmance as to count 1, but dissent from the holding of the court as to count 2. The basis of my dissent will be found in my dissenting opinion in *People* v. *Scott,* 24 Cal.2d 774, 784 [151 P.2d 517].