Filed 4/27/22  P. v. Woods CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> AHERN HAHSHON WOODS, <br><br>     Defendant and Appellant. | D078728 <br><br><br> (Super. Ct. Nos. SCD281690, SCD277369, SCD280048) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth K. So, Judge.  Reversed in part and remanded for resentencing.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski, Acting Assistant Attorney General, A. Natasha Cortina, Annie Featherman Fraser and Paige Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Ahern Hahshon Woods on 28 counts arising from theft and drug-related activity between February 2017 and May 2019. The trial court sentenced Woods to a term of 15 years in prison.

Woods challenges only the convictions on the four counts that relate to the theft of two pickup trucks on different dates in 2019. For both vehicle thefts, Woods was convicted of unlawfully taking a vehicle in violation of Vehicle Code section 10851, subdivision (a) (counts 3 and 5). Woods contends that insufficient evidence supports the jury's finding that he *took* the trucks, as required for the convictions in counts 3 and 5. According to Woods, the evidence supports no more than a finding that he was later found to be *in possession of* the trucks. In addition, for both of the vehicle thefts, the jury also convicted Woods of receiving a stolen vehicle in violation of Penal Code section 496d (counts 4 and 6). Woods contends, and the People agree, that those counts should be reversed because a defendant may not be convicted for stealing and receiving the *same* stolen property.

In supplemental briefing, Woods also contends that this case should be remanded for the trial court to apply the amended sentencing statutes that took effect on January 1, 2022. Those revised statutes (1) amend Penal Code section 1170 to narrow the trial court's discretion to impose an upper-term sentence (Pen. Code, § 1170, subd. (b)(1)-(3)); and (2) amend Penal Code section 654 to expand the trial court's discretion in selecting the count to punish when multiple counts arise from a single act or omission. (*Id*., § 654, subd. (a).)

As to the counts arising from the theft of the pickup trucks, we conclude that substantial evidence supports the convictions for unlawfully taking a vehicle (Veh. Code, § 10851, subd. (a)) in counts 3 and 5, and we concur with the parties that the convictions for receiving those same stolen

2

vehicles in counts 4 and 6 must be reversed.  As to the amended sentencing statutes, we remand to the trial court to resentence Woods in accordance with the amended provisions.  We accordingly reverse the convictions on counts 4 and 6, and we remand for resentencing.  In all other respects, we affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Woods was tried on 35 counts set forth in a consolidated information that arose from crimes that occurred between 2017 and 2019.[1]  Our discussion of the factual background will focus on the evidence relating to the four counts at issue in this appeal.  However, because the sentencing issues raised by Woods concern all of the counts, we also briefly describe the other evidence presented at trial.

A.    *An Overview of Woods's 2017 to 2019 Crime Spree*

The jury heard evidence that on several dates, different victims experienced car burglaries, during which valuable items and, in some cases, personal identifying information or debit/credit cards were taken from their vehicles.  When he was eventually arrested, Woods possessed tools used to illegally open locked cars.  During one of the car burglaries, the victim caught Woods in the act and climbed into Woods's truck to try to retrieve some of her belongings.  Woods sped away from the scene with the victim still standing in the back of his truck.  Woods also accelerated toward the victim's friend as she stood in front of his truck.  Similarly, on several dates, different victims experienced residential or commercial burglaries, in which valuable items were taken.  Items taken in the burglaries were later found in Woods's

---

[1]    During trial, the People dismissed two of the counts (counts 12 and 22), so that the jury was presented with 33 counts on which to reach a verdict.

possession. During one of the residential burglaries, a vehicle at the residence was also taken. Woods's DNA was found on sunglasses left at the scene of that burglary, and the vehicle appears to have been taken by the use of keys that the owner had lost prior to the burglary.

On various dates, Woods was also found with drugs, firearms, or ammunition in his possession, along with the personal identifying information of numerous persons and items indicating that he was involved in selling drugs. On one occasion, when police arrived at a location where they planned to apprehend Woods, he recklessly fled from the officers in a vehicle and took refuge in a motel, where he damaged the walls in an attempt to tunnel through them to escape.

The four counts specifically at issue in this appeal arise from vehicle thefts that occurred on March 10, 2019 (counts 3 and 4) and April 28, 2019 (counts 5 and 6).

B.    *The 2019 Thefts of the Tacoma and the Dodge Ram*

On the morning of March 10, 2019, Raymond R. noticed that his white 2017 Toyota Tacoma pickup truck (the Tacoma) was missing from the hotel parking lot where he left it the previous night. Raymond R. had misplaced the Tacoma's keys shortly before the theft. On May 8, 2019, police located the Tacoma at a storage facility where Woods was on the premises at his storage unit. A video from the storage facility showed that Woods drove the Tacoma that day, and employees at the storage facility testified that Woods had also driven the Tacoma on previous dates. On one occasion, an employee at the storage facility saw a woman drive the Tacoma to the facility to drop it off for Woods.

The keys to the Tacoma were located directly outside of Woods's storage unit when they arrested him. Woods's EBT card was found in the Tacoma.

4

When the Tacoma was recovered, Raymond R. described it as being "a little beat up," and the lock on the driver's side door had been tampered with. The interior was dirty; there was debris in the bed of the truck; and the mileage had increased by 10,000 to 15,000 miles. The license plate on the back of the truck had been replaced with a stolen license plate.

Woods used the Tacoma to commit a car burglary on March 24, 2019, which is 14 days after the Tacoma was stolen on March 10, 2019. When Woods was arrested on May 8, 2019, Raymond R.'s business cards and employment access card were found in Woods's storage unit or in one of Woods's vehicles.

A white Dodge Ram pickup truck (the Dodge Ram) was stolen from Nathan L. on April 28, 2019. A video showed Woods driving the Dodge Ram at the storage facility on May 8, 2019. Employees at the storage facility saw Woods driving the Dodge Ram on other dates as well. The keys or key fob to the Dodge Ram were on Woods's person when he was arrested on May 8, 2019.

Woods was charged in count 3 with unlawfully taking the Tacoma, with the further allegation that the Tacoma had a value of over $950 (Veh. Code, § 10851), and in count 4 with receiving a stolen vehicle, i.e., the Tacoma (Pen. Code, § 496d). Woods was charged in count 5 with unlawfully taking the Dodge Ram (Veh. Code, § 10851), and in count 6 with receiving a stolen vehicle, i.e., the Dodge Ram (Pen. Code, § 496d).[2]

---

2    Before the case was given to the jury, the People elected to proceed with both count 5 (Veh. Code, § 10851) and count 6 (Pen. Code, § 496d) as misdemeanors rather than felonies. The People did so because the owner of the Dodge Ram, Nathan L., did not testify, and therefore the evidence did not show that the value of the Dodge Ram exceeded $950. (*People v. Bullard* (2020) 9 Cal.5th 94, 110 (*Bullard*) ["Except where a conviction is based on

C.      *Woods's Conviction and Sentence*

The jury convicted Woods on all four counts relating to the two stolen trucks (counts 3 through 6). As to the remaining counts, the jury convicted Woods of one count of robbery (Pen. Code, § 211, count 1); five counts of identity theft (Pen. Code, § 530.5, subd. (c)(1), (2) & (3), counts 10, 11, 30, 31 & 35); five counts of receiving stolen property (Pen. Code, § 496, subd. (a), counts 13, 14, 15, 16 & 29); three counts of being a person prohibited from owning or possessing ammunition/firearm (Pen. Code, § 30305, subd. (a)(1), counts 17, 20 & 28); two counts of being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1), counts 19 & 27); two counts of possession for sale of a controlled substance (Health & Saf. Code, § 11378, counts 21 & 34); one count of possession of burglary tools (Pen. Code, § 466, count 23); one count of reckless evading (Veh. Code, § 2800.2, subd. (a), count 24); one count of vandalism (Pen. Code, § 594, subds. (a), (b)(1), count 25); one count of burglary (Pen. Code, § 459, count 26); one count of grand theft of a firearm (Pen. Code, § 487, subd. (d)(2), count 32); and one count of transportation of controlled substances for sale (Health & Saf. Code, § 11379, subd. (a), count 33). [3]

---

posttheft driving (i.e., driving separated from the vehicle's taking by a substantial break), a violation of [Vehicle Code] section 10851 must be punished as a misdemeanor theft offense if the vehicle is worth $950 or less"]; but see *People v. Orozco* (2020) 9 Cal.5th 111, 123 ["Proposition 47's amendments to [Penal Code] section 496[, subdivision ](a) [making the offense a misdemeanor if value of the stolen item is below $950] do not affect punishments for receipt of stolen vehicles under [Penal Code] section 496d."].)

[3]      The jury was unable to reach a verdict on counts 7, 8, 9 (burglary, grand theft, and vandalism as to a specific victim) and count 18 (possession for sale of methamphetamine). The court declared a mistrial on those counts, and the People dismissed them.

6

Prior to trial, Woods admitted allegations under Penal Code section 666.5, subdivision (a) that he had four prior vehicle theft convictions (Veh. Code, § 10851), and also admitted that he had two prior convictions for possessing personal identifying information (Pen. Code, § 530.5). Woods further admitted that he committed many of the instant offenses while he was out on bail on one or more cases (*id.*, § 12022.1, subd. (b)).[4]

Woods was sentenced to an upper term sentence of six years on count 26 (burglary), as the principal count. The trial court imposed a consecutive one-year sentence (one third the mid-term) on each of counts 1 and 3; a consecutive sentence of eight months (one third the mid-term) on each of counts 10, 19, and 24; and a consecutive sentence of two years for the enhancement on each of counts 21 and 32 (Pen. Code, § 12022.1, subd. (b)). It imposed concurrent upper term sentences of three years on each of counts 11, 13, 14, 15, 16, 17, 20, 21, 25, 27, 28, 30, 31, and 35. Pursuant to Penal Code section 654, it stayed upper term sentences of three years each on counts 29, 32, and 34, and an upper term sentence of four years on count 4. The total prison term was 15 years.

## II.

## DISCUSSION

A.  *Substantial Evidence Supports the Convictions for Unlawfully Taking a Vehicle in Counts 3 and 5*

We first consider Woods's contention that insufficient evidence supports the convictions for unlawfully taking a vehicle (Veh. Code, § 10851) in counts 3 and 5.

---

[4]     Similarly, at trial, the jury was informed of a stipulation that Woods was a felon and was convicted under Penal Code section 530.5, subdivision (c)(1) in 2017.

As we have explained, count 3 was based on the taking of the Tacoma, and count 5 was based on the taking of the Dodge Ram. Specifically, the consolidated information alleged that Woods violated Vehicle Code section 10851, subdivision (a) in both of those counts. That provision states, "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense . . . ." (Veh. Code, § 10851, subd. (a).)

Although the statute criminalizes either the taking *or* the driving of a vehicle with the intent to either permanently *or* temporarily deprive the owner of possession, the jury was instructed only on the theory of unlawful *taking* with the intent to *permanently* deprive.[5] In relevant part, as to both counts 3 and 5, the jury was instructed with CALCRIM No. 1820 as follows: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took someone else's vehicle without the owner's consent; [¶] 2. When the defendant took the vehicle, he intended to permanently deprive the owner of possession or ownership of the vehicle

_____

[5]    "[Vehicle Code] section 10851, subdivision (a), ' "proscribes a wide range of conduct." ' [Citation.] A person can violate [Vehicle Code] section 10851 by '[u]nlawfully *taking* a vehicle with the intent to permanently deprive the owner of possession.' [Citation.] [Vehicle Code] [s]ection 10851 can also be violated 'when the driving occurs or continues after the theft is complete' (referred to by the Supreme Court as 'posttheft driving') or by ' "driving [a vehicle] with the intent only to temporarily deprive its owner of possession (i.e., joyriding)." ' " (*People v. Gutierrez* (2018) 20 Cal.App.5th 847, 853-854.)

8

. . . . " The jury was also instructed that "[a] taking requires that the vehicle be moved for any distance, no matter how small."[6]

Woods contends that insufficient evidence supports the convictions in count 3 and count 5 for unlawfully taking the Tacoma and the Dodge Ram. Specifically, he argues that "the evidence does not support the taking convictions as no one saw Woods take either truck, only that he was later found in possession of them." According to Woods, insufficient evidence supports the convictions because, among other things, "[n]o witness testified that he was seen at either of the places the trucks were stolen, and no video surveillance or any other evidence puts him even in vicinities of the thefts." He points out that it was two weeks after the Tacoma was taken on March 10, 2019, that he was seen driving the Tacoma during a car burglary on March 24, 2019. Further, it was several days after the Dodge Ram was taken on April 28, 2019, that he was found with it during his May 8, 2019 arrest at the storage facility. According to Woods, these time gaps "support[ ] the notion that Woods received [the trucks] after another person stole the[m]." Wood states that he "does not dispute he was caught in the possession of two stolen trucks. But he believes the evidence does not support the convictions for the taking of those trucks."

" ' "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the

---

[6]    The instruction for count 3 also included the element that the vehicle was worth more than $950.

9

light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]' . . . ' " 'The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.]' " ' " (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104, citation omitted.)

The question before us is whether the evidence was sufficient to support a finding that Woods was the person who took the Tacoma and the Dodge Ram. As our Supreme Court has explained, "possession of recently stolen property, *if uncorroborated*, is . . . insufficient to establish the accused's guilt of a theft-related offense." (*People v. Najera* (2008) 43 Cal.4th 1132, 1138, italics added.) This principle "does not derive from an extrinsic legal rule but, rather, is apparent from the general rule governing the jury's consideration of circumstantial evidence. As we long ago observed, there may be an innocent explanation for the circumstance of possession." (*Ibid.*) Thus, "[w]hile the mere possession of stolen property is not *alone* sufficient to sustain a conviction of grand theft . . . such possession plus '*slight* corroborative evidence of other inculpatory circumstances' will suffice." (*People v. Wissenfeld* (1951) 36 Cal.2d 758, 763 (*Wissenfeld*), citation omitted, italics added.) "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, *slight* corroboration in the form of statements or conduct of the defendant tending to show his guilt." (*People v. McFarland* (1962) 58 Cal.2d 748, 754, italics added.) For example, "the attributes of the possession—time, place, and

10

manner—may furnish the additional quantum of evidence needed" to support a conviction for theft. (*People v. Hallman* (1973) 35 Cal.App.3d 638, 641.)

Here, as Woods points out, there is no evidence *directly* proving that he committed the acts of taking the Tacoma from Raymond R. and the Dodge Ram from Nathan L. However, as we will explain, there is at least " 'slight corroborative evidence of other inculpatory circumstances' " (*Wissenfeld*, *supra*, 36 Cal.2d at p. 763) to support a finding that Woods was the person who stole both of those vehicles from their owners.

Significantly, the evidence showed that Woods was in possession of both stolen vehicles within two weeks of when they were taken. The Dodge Ram was recovered from Woods at the storage facility 10 days after it was stolen, but he had possession of it *even before* that date. Specifically, an employee at the storage facility testified that "[t]he majority of the time," Woods came to the facility in the Dodge Ram. As for the Tacoma, the evidence supports a finding that Woods used that vehicle to carry away loot from a car burglary on March 24, 2019, which was 14 days after the Tacoma was stolen.

Woods contends that the time gaps between the vehicle thefts and his possession of the vehicles are long enough that the timeline provides no corroboration that he was the thief of either the Dodge Ram or the Tacoma. We are not persuaded. A reasonable juror could reach the *opposite* conclusion. A reasonable person could conclude that a gap of less than 10 days and of 14 days, respectively, are relatively *short* time gaps, and that they thus provide the "slight" corroboration needed that Woods was the person who took the trucks. (*Wissenfeld*, *supra*, 36 Cal.2d at p. 763.)

Other evidence provides additional "slight" corroboration that Woods was the car thief of the Tacoma and the Dodge Ram. (*Wissenfeld*, *supra*, 36

Cal.2d at p. 763.)  First, the jury heard evidence that Woods stole a *third* vehicle under similar circumstances.  Specifically, in August 2018, a vehicle was stolen during a residential burglary where Woods's DNA was found on sunglasses left behind by the burglar.  The vehicle in that burglary was stolen by using car keys that had gone missing *prior* to the theft.  The jury could reasonably conclude that the same method (keys obtained *prior* to the vehicle theft) was used to steal both the Tacoma and the Dodge Ram, as Raymond R. testified that his keys went missing *before* the Tacoma was stolen, and the keys to *both* the Tacoma and the Dodge Ram were in Woods's possession when those trucks were recovered.[7]

Next, property belonging to the owner of the Tacoma (Raymond R.) was found in Woods's possession when he was arrested at the storage facility.  That fact supports an inference that Woods was the person who *initially* took the Tacoma and therefore had the opportunity to take whatever personal property was inside of it.

In addition, the license plate on the Tacoma had been switched out with a stolen license plate—a fact that supports an inference that Woods knew he was driving a stolen vehicle and was trying to hide that fact.

Finally, the evidence at trial was overwhelming that Woods was involved in a lengthy criminal enterprise that involved multiple car burglaries, and that he had tools used for breaking into cars in his possession.

---

[7]    Woods contends that the fact he had the keys to the Tacoma and the Dodge Ram tends to *disprove* he was the car thief.  We disagree.  In the circumstances of this case, Woods's possession of the keys does not disprove that he was the car thief, as Raymond R. stated that his car keys went missing before the theft of the Tacoma, and the evidence supports a finding that Woods stole a third vehicle using keys taken from the owner.

All of these facts, taken together, provide the necessary " 'slight corroborative evidence of other inculpatory circumstances' " to support a finding by a reasonable juror that Woods was the person who stole the Tacoma and the Dodge Ram.  (*Wissenfeld*, *supra*, 36 Cal.2d at p. 763.)[8]

B.     *The Convictions for Unlawfully Receiving a Stolen Vehicle in Counts 4 and 6 Must Be Reversed in Light of the Convictions for Unlawfully Taking the Same Vehicles in Counts 3 and 5*

We next consider Woods's contention that he was improperly convicted in counts 4 and 6 for receiving the same stolen vehicles that he was convicted of unlawfully taking in counts 3 and 5.

As we have explained, in counts 4 and 6, Woods was convicted of receiving the stolen Tacoma and the stolen Dodge Ram.  (Pen. Code, § 496d.) In counts 3 and 5, he was convicted of unlawfully taking those same vehicles. (Veh. Code, § 10851, subd. (a).)

The law is clear that " '[a] person who violates [Vehicle Code] section 10851[, subdivision](a) by taking a car with the intent to permanently deprive the owner of possession, and who is convicted of that offense on that basis, cannot also be convicted of receiving the same vehicle as stolen property.' " (*Bullard*, *supra*, 9 Cal.5th at p. 103.)  In the case of improper dual convictions, the proper practice is to "revers[e] a receiving stolen

_____

8     Woods cites a series of cases in which the evidence was determined to be sufficient to support a finding that the defendant was the person who unlawfully took a vehicle.  (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1577; *People v. Green* (1995) 34 Cal.App.4th 165, 180; *People v. Windham* (1987) 194 Cal.App.3d 1580, 1590; *In re Robert V.* (1982) 132 Cal.App.3d 815, 821.)  Based on those authorities, Woods argues that his case does not present the type of facts that typically support a vehicle theft conviction. Woods's argument lacks merit because the sufficiency of the evidence to support a conviction for theft must necessarily be based on the *unique* facts of each case.  As we have explained, the evidence presented at trial supports a finding that Woods was the person who took the Tacoma and the Dodge Ram.

property conviction when the defendant is also convicted of stealing the property." (*People v. Ceja* (2010) 49 Cal.4th 1, 10.)

Based on this authority, Woods argues, and the People concede, that Woods's convictions in counts 4 and 6 for receiving the stolen Tacoma and the stolen Dodge Ram must be reversed.

We concur with the parties' position, and we accordingly reverse Woods's convictions for violation of Penal Code section 496d in counts 4 and 6.

C.    *Remand for Resentencing is Required Due to Recent Statutory Amendments to the Laws Governing Sentencing*

Effective January 1, 2022, two amended sentencing provisions that are relevant in this case went into effect.

First, effective January 1, 2022, Penal Code section 1170 was amended. (See Sen. Bill No. 567 (2021-2022 Reg. Sess.); Stats. 2021, ch. 731, § 1.3; Assem. Bill No. 124 (2021-2022 Reg. Sess.); Stats. 2021, ch. 695, § 5.)  As relevant here, under the amended statute, a court must "order imposition of a sentence not to exceed the middle term," except under narrow circumstances. (Pen. Code, § 1170, subd. (b)(1).)  An upper term may be imposed "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (b)(2).)  Nevertheless, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)

Here, the trial court selected the upper term for many of the counts. Specifically, it selected the upper term on the principal count of burglary

14

(count 26).  It also imposed concurrent upper term sentences of three years each on counts 11, 13, 14, 15, 16, 17, 20, 21, 25, 27, 28, 30, 31, and 35.  The counts that the trial court stayed pursuant to Penal Code section 654 were also upper term sentences (counts 4, 29, 32 & 34).

Second, when Woods was sentenced, former Penal Code section 654 provided that an "act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (Former Pen. Code, § 654, subd. (a).)  Assembly Bill No. 518 (2021-2022 Reg. Sess.), effective January 1, 2022, amended Penal Code section 654 to provide that where an act or omission is punishable by different provisions, the defendant "may be punished under either of such provisions."  (Pen. Code, § 654, subd. (a).)  Thus, where Penal Code section 654 applies, a trial court now has discretion to determine which counts will be stayed, regardless of which count provides for the longest term of imprisonment.

Here, as required by the former version of Penal Code section 654, subdivision (a), the trial court stayed three-year sentences on each of counts 29, 32, and 34.[9]  Count 29 (receiving stolen property) and count 32 (grand theft firearm), which arose from the same residential burglary as count 26, were apparently stayed in favor of the imposition of the longer six-year sentence on the burglary count.  Count 34 (possession for sale of methamphetamine) was apparently stayed in favor of the potential higher sentence for transportation for sale of methamphetamine.

---

[9]    The trial court also stayed the sentence on count 4 pursuant to Penal Code section 654.  However, as we have explained, the conviction on count 4 must be reversed.

15

The parties are in agreement that the amended sentencing provisions in Penal Code sections 1170, subdivision (b), and 654, subdivision (a), apply retroactively to Woods because his case is not yet final on appeal. We agree with the parties that the amended provisions apply retroactively to Woods. (*People v. Mani* (2022) 74 Cal.App.5th 343, 379 [the amendment to Pen. Code, § 654 is an ameliorative statute that applies retroactively to cases not yet final on appeal]; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 ["The People correctly concede the amended version of [Penal Code] section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal."].)

However, the People contend that we need not remand for the trial court to apply the amended sentencing provisions because the trial court's application of the former sentencing provisions was not prejudicial. Specifically, the People contend that were we to remand to the trial court, that court would undoubtedly impose the same upper term sentences under the amended provisions.

1. *Sentencing Under the Amended Version of Penal Code Section 1170, Subdivision (b)*

We first examine whether the trial court's imposition of upper term sentences under the prior version of Penal Code section 1170, subdivision (b) was prejudicial. The trial court explained its selection of the upper term sentences as follows: "In many of these, the upper term is chosen[,] and the upper term is chosen as the probation officer has indicated, because the circumstances in aggravation, in my view and in the view of the probation officer, clearly outweigh the circumstances in mitigation including the following: [¶] As to count 1, the crime involved the threat of great bodily harm. As to counts 1 through 10, the crimes indicated planning and some

16

sophistication.  In counts 1 and 26, the crime involved an actual taking of great monetary value.  Count 21, there was a large amount of contraband.  As far as counts 33 and 35 are concerned, you were already being supervised when the crime was committed.  As to all [counts], your convictions as an adult are numerous and you have an arrest record dating back to 1993.  You have been previously committed to prison and your performance on probation, parole, and community supervision have not been satisfactory."

In making this determination, the trial court plainly relied on numerous factors that, absent a finding by the trier of fact, a stipulation, or a certified record of conviction, are no longer permitted to be considered under the current version of Penal Code section 1170, subdivision (b).  First, the trial court relied on the factual determinations that certain counts either "involved the threat of great bodily harm," "indicated planning and some sophistication," "involved an actual taking of great monetary value," or involved "a large amount of contraband."  None of those factual determinations were made by the jury, and we cannot conclude that the jury would unquestionably have found those facts to be true.  (Cf. *People v. Sandoval* (2007) 41 Cal.4th 825, 839 [in deciding whether Sixth Amendment error properly may be found harmless, the court reviews whether "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true" an aggravating circumstance].)  Second, the trial court relied on a finding that Woods's "convictions as an adult are numerous" and that he had "an arrest record dating back to 1993."  Although the current version of Penal Code section 1170, subdivision (b) allows the trial court to "consider the defendant's prior convictions in determining sentencing *based on a certified record of conviction* without submitting the prior convictions to a jury" (Pen. Code, § 1170, subd.

17

(b)(3), italics added), there is no indication that the trial court was presented with certified records of conviction. Further, although Woods did admit to *some* of his prior convictions because they were alleged in connection with certain of the counts (i.e., four prior convictions under Veh. Code, § 10851 and two prior convictions under Pen. Code, § 530.5), the probation officer's report set forth numerous *additional* prior convictions, which Woods did not admit. Finally, the trial court also noted that Woods had "been previously committed to prison," Woods's "performance on probation, parole, and community supervision ha[d] not been satisfactory," and that, as to counts 33 and 35, Woods was "already being supervised when the crime was committed." None of those facts were found true by the jury, based on certified records of conviction, or stipulated to by the parties.

The trial court stated that it decided to impose upper term sentences because "the circumstances in aggravation, in my view and in the view of the probation officer, clearly outweigh the circumstances in mitigation." As it is not clear which factors will be able to be established under the new version of the statute, we are unable to conclude that the trial court would reach the same conclusion regarding the imposition of upper term sentences on remand. Accordingly, we reject the People's contention that if we were to remand to allow the trial court to apply the amended version of Penal Code section 1170, subdivision (b), the trial court would once again impose upper term sentences, and that, accordingly, remand is not warranted.

2. *Sentencing Under the Amended Version of Penal Code Section 654*

The People contend that we need not remand for resentencing under the amended version of Penal Code section 654 because "[a]s the trial court imposed consecutive, upper term sentences, it is clear it would not have imposed a shorter term on the stayed counts."

18

We reject the argument. Where a change in the law confers previously unavailable discretion on a trial court, a remand is appropriate unless "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) At the time the trial court sentenced Woods, it had no discretion to choose which counts to stay under Penal Code section 654, and it accordingly gave no indication of how it would exercise any such discretion. Although the trial court's choice of upper term sentences provides *some* indication that the trial court might choose to exercise its newly conferred discretion under Penal Code section 654 by electing to stay the counts with the *shorter* terms of imprisonment, the record does not clearly indicate that the trial court would take that approach on remand.

In sum, remand is required so that the trial court may apply the amended versions of Penal Code sections 1170 and 654 in sentencing Woods.

DISPOSITION

The convictions in counts 4 and 6 for receiving a stolen vehicle (Pen. Code, § 496d) are reversed. Further, Woods's sentence is vacated, and this matter is remanded for the trial court to apply the amended sentencing provisions currently set forth in Penal Code sections 1170 and 654. In all other respects, the judgment is affirmed.


IRION, J.

WE CONCUR:



McCONNELL, P. J.



AARON, J.

20